IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO

IN RE:

LASER REALTY, INC.
    Debtor

CASE NO. 04-12634(ESL)
Chapter 7

NOREEN WISCOVITCH-RENTAS, as
Chapter 7 Trustee for the Estate of
LASER REALTY, INC.

    Plaintiff

    v.

Adv. No. 06-00186(ESL)

VENANCIO MARTI SANTA; JULITA
SOLER-VILA; and the CONJUGAL
PARTNERSHIP composed by them

    Defendants

## OPINION AND ORDER

This is an action to recover fraudulent transfers pursuant to 11 U.S.C.A. § 548. The Chapter 7 trustee (hereinafter "trustee") for the estate of Laser Realty, Inc. (hereinafter "Laser") seeks to avoid and recover a series of transfers made by Laser to defendants Venancio Marti Santa, Julita Soler-Vila, and the conjugal society composed by them (hereinafter "defendants"). The trustee asserts that Laser made 22 transfers in the total amount of $128,947.28 to the defendants within a year preceding the filing of the bankruptcy petition, while the debtor was insolvent, and for which the debtor did not receive anything of value in exchange of the payments for the defendants' credit cards. The defendants allege that the payments were not made from property of the estate and that Laser was a mere conduit for the payments. After having denied three motions for summary judgment filed by plaintiff, the court scheduled and held a trial on the merits.

## PROCEDURAL BACKGROUND

Laser filed a voluntary Chapter 11 petition on December 14, 2004. The case was converted to Chapter 7 on October 14, 2005 upon debtor's request. The Chapter 7 trustee filed the instant action on September 18, 2006.

The trustee alleges that the transfers object of this adversary proceeding were made from December 15, 2003 to December 15, 2004, that is, within one year from petition date; were made while the debtor was insolvent; and Laser did not receive anything of value to merit such transfers. The trustee asserts that based on these facts the transfers are voidable under 11 U.S.C.A. § 548 (a) (1) (B) (i, ii) (I); and consequently, must be turned over for the benefit of the estate pursuant to 11 U.S.C.A. § 550.

## THE PARTIES

Mr. Antonio Fernandez, now deceased, and his wife owned a corporation in which Mr. Venancio Marti Santa and his wife were also shareholders. The name of the corporation was Insular Wire Products, Inc. Mr. Venancio Marti Santa sold his shares (50% interest) in Insular Wire Products, Inc. to Mr. Antonio Fernandez and his wife several years after developing a medical condition in 1988. The agreement was verbal. The repayment terms were scribbled on a piece of paper. The repayment terms covered from June 30, 1996 to 2005. The agreement was an arms length transaction between two old friends. There were no legal formalities observed.

Insular Wire Products, Inc. became Laser Realty, Inc., the debtor in this case. The shareholders of Laser as of petition date were Mr. Antonio Fernandez and his wife. Laser owned a commercial real estate at Lucchetti Park. Florida Tube Corp. and Corus Hardware Corp. were owned by Mr. Antonio Fernandez and his wife as of petition date. Mr. Fernandez and his wife, and all the corporations named above have filed for bankruptcy.

Mr. Fernandez was making payments of the amounts owed to Mr. Venancio Marti Santa from funds in Laser's FirstBank checking account. The checks were made to pay credit cards under Mr. Marti Santa's name.

## THE FACTS

Most of the material and relevant facts are uncontested. The threshold issues depend on the legal implications of the parties' actions. The testimony of Mr. Venancio Marti Santa was direct and candid. The court finds that Mr. Marti Santa's testimony narrated what actually happened in relation

to the transaction described above. The problem lies in applying the facts to applicable bankruptcy law. A verbal agreement between two friends, a gentlemen's agreement, as long as there are funds to comply with its terms, irrespective of their source, and no third parties are prejudiced, will usually go unnoticed by creditors or third parties. However, when the strictures of the Bankruptcy Code set in because a debtor is unable to pay all creditors in full the debts as they mature, the scenario changes. It is under the aegis of the Bankruptcy Code that the court will render its decision.

Uncontested Facts:

During the year immediately preceding the filing of Laser's bankruptcy petition, that is, between December 15, 2003 and December 15, 2004, a series of checks from Laser's FirstBank account #25-05003050 were issued in favor of American Express, Citi Cards and FirstBank to pay credit card accounts belonging to Mr. Marti. The payments that Laser made to Mr. Marti's personal credit card accounts during the year preceding the filing of the petition total $128,947.28.

The parties have further stipulated that during the period between December 15, 2003 and December 15, 2004, Laser was insolvent, Laser did not receive any value from either Mr. Marti or from Mrs. Soler in exchange for the payments that Laser made to satisfy debts of their personal credit card accounts. There is no written agreement, corporate resolution, accounting record, or formal document to evidence that Laser received reasonable value in exchange for the transfers it made to Mr. Marti's personal credit card accounts.

The documents filed before the bankruptcy court, as well as the testimony of Mr. Fernandez at the 341 meeting show that Laser's only source of income is the monthly rental paid by Corus Hardware Corp. in the amount of $60,000 per month. During 2004 Florida Tube Corp. issued checks to the order of Insular Wire Products (a.k.a Laser) for approximately $383,000. There is no corporate resolution to evidence that Florida Tube Corp. received value in exchange for the transfers it made to Laser. Although there is no written lease agreement, prior to 2003 Florida Tube Corp. and Corus Hardware Corp. were leasing from Laser the property at Lucchetti Park. Florida Tube paid $20,000 and Corus Hardware paid $40,000, for a total of $60,000 per month. Pursuant to an

agreement executed in 2003, Corus became the sole lessee of Laser's property located at Lucchetti Park and paid $60,000 per month. The court notes that the payments by Florida Tube in 2004 were not in accordance with a written contract, and there is no evidence of having received anything of value. The inference, in light of the uncontested facts is that Mr. Fernandez was managing his corporations according to his needs.

The Trial:

The chapter 7 trustee opened by arguing that the defendants received checks from Laser to pay for personal credit cards. The payments were made to credit a personal debt of Mr. And Mrs. Fernandez to Mr. and Mrs. Marti, resulting from a transaction wherein Mr. Marti sold his shares in Insular Wire Products, Inc. to Mr. Fernandez. The transaction was made in the parties' personal capacity. The parties have stipulated that the debtor was insolvent at the time the payments were made. Trustee/plaintiff claims that such payments are voidable transfers pursuant to 11 U.S.C.A. §§ 548 (a) (1) (B) (i) and (ii).

Defendants' opening argument summarizes their defense by alleging that the payments Laser made to the defendants were not made from property of the estate. Their reasoning is that the only source of income that debtor Laser received was from lease payments. The funds transferred by Florida Tube Corp. were a mere conduit for the payment of Mr. Fernandez personal obligations as Florida Tube had no obligation to Laser. Consequently, the funds were Florida Tube's and not property of Laser's estate.

Mr. Albert Tamares Vazquez, a CPA contracted by the trustee to review debtor's accounting books and records, testified that he reviewed the accounting books and ledgers, and met with Mr. Fernandez and Ms. Lourdes Hernandez, comptroller for Corus Hardware. His testimony is based on the records reviewed and the meetings.

Laser and Corus are related corporations as both are owned by Mr. and Mrs. Fernandez. Corus leased the Lucchetti Park property from Laser. Mr. Tamares could not determine the financial condition of the debtor corporation as not all relevant documents were produced by Mr. Fernandez

4

and some may have been destroyed after the second 341 meeting of creditors. However, it was clear from the bank statements produced and examined, that Laser was making payments to Mr. Venancio Marti Santa and for personal expenses of Mr. Antonio Fernandez.

Laser's only source of income was from rent in the monthly amount of $60,000. The mortgage payments over the Lucchetti Park property were approximately $45,000. The balance of $15,000 was used by Mr. Fernandez as he wished, as if it were his personal bank account. The records do not show that Laser had any employees. However, there are a series of checks drawn in the name of persons on whom there are no corporate records.

Codefendant Venancio Marti Santa is a civil engineer who developed housing projects for approximately 40 years and is now in the agriculture business. He was a partner and shareholder of Insular Wire Products Inc., together with his friend Mr. Antonio Fernandez, since approximately 1981. The relation continued for approximately 10 years. He had a heart attack in 1988, so he decided several years later to sell his 50% of the stock in Insular Wire Products, Inc. to Mr. Antonio Fernandez for the amount of $2,000,000 to be repaid in 10 years at 5% interest.

The verbal agreement was one between friends. Mr. Fernandez paid most of the time. However, it came a time when Mr. Fernandez did not have the money to continue making regular payments, so they agreed in 1996 that payment would be made to his credit cards. Mr. Marti would send a credit card statement by fax and Mr. Fernandez would pay the same. Mr. Marti stated that he did not know from what corporation Mr. Fernandez was making the payments. Mr. Marti was aware of the payments but not their source. Mr. Fernandez had represented to Mr. Marti that it was his money.

## DISCUSSION

As explained in more detail below, the uncontested facts show that plaintiff has made a prima facie case under 11 U.S.C.A. §§ 548 (a) (1) (B) (i) and (ii). The court must then determine whether the defendants' legal arguments defeat the chapter 7 trustee's case. The court finds that they do not.

5

Section 548

Section 548 was amended in 2005 to change the reach back period to two years. The bankruptcy petition was filed in 2004. In cases filed prior to the effective date of the 2005 amendments to section 548 the trustee must establish the following to avoid a fraudulent transaction: (1) the debtor transferred an interest in property; (2) the transfer occurred within one year prior to the filing of the bankruptcy case; (3) the debtor was insolvent on the date of the transfer; and (4) the debtor received less than the equivalent value in exchange for the transfer. In re GWI PCS 1 Inc., 230 F.3d 788 (5th Cir. 2000), cert. Denied, 533 U.S. 964, 121 S.Ct. 2623, 150 L. Ed. 2d 776 (2001). Defendants only question the first requirement, that there was a transfer of an interest of the debtor. The basis for their position is that the debtor was a mere conduit of the payments.

There is no question that payments were made from Laser's checking account to pay for credit card expenses of Mr. Venancio Marti Santa. The transfers being questioned by the trustee are limited to the ones made one year from petition date. The parties have stipulated that the debtor was insolvent when the payments were made. Also, the facts show that debtor did not receive any consideration for the transfer. The payments drawn on Laser's account were for a debt personally incurred by debtor's principal, Mr. Antonio Fernandez. Therefore, all the elements required to establish the voidable transfer are met.

Having found that the transfers are voidable under section 548, the trustee may recover the same from the transferee pursuant to section 550 (a) (1). In re Anton Noll, Inc., 277 B.R. 875, 878 (1st Cir. BAP 2002).

Property of the Estate

Section 548 (a) (1), as does section 547(b) for preference actions, refers to transfers of an "interest of the debtor in property." The critical element in determining whether the transfer involved an interest of the debtor in property "is whether the property transferred would have been part of the bankruptcy estate had it not been transferred before the petition date." In re Neponset River Paper Company, 231 B.R. 829, 833 (1st Cir. BAP 1999). The transfer must diminish the debtor's funds.

Additionally, the debtor must exercise control over the transferred property. In re Neponset River Paper Company, id at 833.

The transfers which the trustee seeks to avoid were made from debtor's checking account. The account was under debtor's control, albeit used in part by debtor's principal to pay his personal debts. If the funds would have been in debtor's account as of petition date the same would definitely be property of the estate within the broad meaning specified in 11 U.S.C.A. § 541 (a) (1). Laser had the ability to disburse funds to FirstBank in payment of the real estate mortgage over property owned by Laser, or Mr. Antonio Fernandez' personal debts, including Mr. Marti's debt. The payments made were from Laser's checking account, which was under its legal control. Thus, Laser had an interest in said property. In re Reale, 393 B.R. 821, 826-827 (1st Cir. BAP 2008).

Upon the filing of a bankruptcy petition an estate is created and "is comprised of all legal or equitable interests of the debtor in property." 11 U.S.C.A. § 541 (a) (1). The Bankruptcy Code determines what is property of the estate pursuant to section 541 (a) and state law determines if an interest in property exists. In re Caribbean Resort Construction and Maintenance, Inc., 318 B.R. 241, 245 (Bankr. D.P.R. 2003). Amounts deposited in and under the control of the debtor confer a legal or equitable interest in the funds. Thus, the fund used to make the payments to Mr. Marti are property of the estate.

The Agreement

The verbal agreement was executed by and between Mr. Antonio Fernandez and Mr. Venancio Marti Santa, in their respective personal capacity, for the purchase by Mr. Fernandez of 50% of the stock owned by Mr. Venancio Marti Santa in Insular Wire Products, Inc. The purchase price was for $2,000,000 to be repaid within 10 years with an interest of 5% per year. Mr. Marti Santa testified that Mr. Fernandez paid regularly for some time, but for the last 7 years the irregular payments were done from Laser's checking account in payment of personal credit card statements of Mr. Venancio Marti Santa.

The court notes that on May 21, 2008 Chief Judge Gerardo A. Carlo entered a bench order

in the bankruptcy case granting the trustee's motion for summary judgment wherein she requested that the proof of claim filed by Mr. Venancio Marti Santa be disallowed in its entirety as the Debtor corporation (Laser). The basis for the motion for summary judgment was that the agreement for the sale and purchase of 50% of the stock in Insular Wire Products Inc. was between Mr. Venancio Marti Santa and Mr. And Mrs. Antonio Fernandez in their respective personal capacities, and that Laser had not guaranteed the debt to Mr. Marti Santa. Mr. Marti Santa is not claiming in this adversary that the debt is guaranteed by Laser.

Conduit Defense

The funds against which Laser made the checks or transfers to Mr. Venancio Marti Santa were in a checking account under the dominion and control of Laser. The fact that Laser's principal, Mr. Antonio Fernandez, used these funds for his personal benefit does not divest Laser of the legal right to the same. In re Anton Noll, Inc., 277 B.R. 878-881. Therefore, Laser was not a mere conduit of the funds deposited in its checking account. It had dominion and control of the funds, even when its principal determined how they would be used, including paying his personal debts, as the one incurred with Mr. Marti Santa. The debtor (Laser) exercised control over the funds disposition, and was not a mere conduit. In re Reale, 393 B.R. 827.

The facts of this case are in sharp contrast with the facts before this court in In re Net Velazquez, 397 B.R. 231 (Bankr. D. P.R. 2008). In In re Net the debtor never transferred or negotiated a check in favor of a corporation he owned. The check was drawn in debtor's name and was never indorsed in favor of the corporation. "The debtor merely cashed the check by simultaneously depositing it in the company's account." In re Net Velazquez, 397 B.R. 239. The debtor in In re Net was a conduit because it " did not have any rights in, or control and dominion of the check or the funds." The conduit was a dormant paper corporation. In this case the debtor as lessee received payments from related corporations and deposited them in a checking account over which it had legal dominion and control. Once the lease payments were deposited in Laser's checking account, Laser was vested with the dominion and control necessary to claim ownership under Puerto Rico law. 31 L.P.R.A. §§ 1111 and 1114.

Earmarking Doctrine

Closely related to the conduit defense is the earmarking doctrine. Earmarked funds pass through a conduit for payment to a creditor. If the debtor exercises no control over the disposition of the earmarked funds, the funds do not become property of the estate, and there is no transfer of an interest in property of the debtor as required by section 548. As this court held in In re Net Velazquez:

> In a classic "earmarking" situation, an old creditor is substituted for a new creditor that lends or advances funds to the debtor on the specific condition that said funds shall be used to pay off the old creditor. " In such circumstances, the debtor functions as a 'mere conduit' and exercises no control over the funds' disposition." Such a transaction merely replaces one creditor for another without any effect on distributions to other creditors. The debtor never becomes the owner of the funds which are momentarily placed in its hands (the debtor acts as a kind of bailee). . . . This approach "leaves the estate no worse off than it would have been if the [new creditor] had advanced nothing to the debtor but paid off the debt directly.

397 B.R. 240-241 (Footnotes and citations omitted.)

Certainly, the facts of this case do not meet the factors necessary for determining that the transfers satisfy the earmarking doctrine. There is no agreement that the funds will be used to pay an antecedent third party debt. The only agreement is a verbal agreement for the sale of stock between two individuals and that the repayment will be made in a period of ten years at a 5% interest rate. The debtor was not a party to this agreement. The Debtor is a corporation. As a corporation, it is a person with separate rights and responsibilities from that of its shareholders. 14 L.P.R.A. § 2601, et seq. The agreement was made by debtor's principal in his personal capacity. If there is no agreement between the Debtor/Laser and Mr. Marti Santa, there can be no compliance with its terms. Furthermore, as the funds deposited in Laser's account were from lease payments, and such lease payments were debtor's only source of income, it cannot be found that the transfers did not result in a diminution of the estate. In re Neponset River Paper Company, 231 B.R. 834. Consequently, the earmarking doctrine does not apply to this case and may not be invoked as a defense that the transfers in question were of an interest of property of the debtor.

CONCLUSION

In view of the foregoing reasons, the court finds and concludes that the transfers are voidable pursuant to section 548. The court further finds that the defendants may not avail themselves of the conduit and/or earmarking defenses. Therefore, the Chapter 7 trustee may recover from defendants pursuant to section 550 the transfers made within one year from petition date, that is, the amount of $128,947.28.

Judgment shall be entered accordingly.

SO ORDERED.

Dated this 7th day of June, 2011 in San Juan, Puerto Rico.

*Enrique S. Lamoutte*
United States Bankruptcy Court